IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHISN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| JOSE LUIS VELASQUEZ-HUIPE, | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| v. | § | 2:17-CV-050 |
| | § | |
| UNITED STATES OF AMERICA, | § | |
| | § | |
| Respondent. | § | |

**FINDINGS, CONCLUSIONS AND RECOMMENDATION
TO DENY MOTION UNDER 28 U.S.C. § 2255 TO VACATE, SET ASIDE,
OR CORRECT SENTENCE BY A PERSON IN FEDERAL CUSTODY**

Before the Court is petitioner JOSE LUIS VELASQUEZ-HUIPE's Motion Under 28 U.S.C. § 2255 to Correct Sentence. By his motion, petitioner challenges his conviction, pursuant to a guilty plea, for the offense of illegal re-entry after deportation and the resultant 65-month sentence. For the reasons set forth below, petitioner's motion should be DENIED.

I.
BACKGROUND

On May 21, 2015, petitioner was charged in a single-count Indictment with the offense of illegal re-entry after deportation (Count 1). *United States v. Velasquez-Huipe*, Case No. 2:15-CR-58 (hereinafter "CR-ECF No.") ECF No. 12. On June 2, 2015, the Court appointed the Federal Public Defender's Office to represent petitioner.

On July 2, 2015, petitioner signed a Plea Agreement providing, *inter alia*, that he agreed to waive certain rights in exchange for his guilty plea to the offense alleged in Count 1 of the Indictment, that he understood the nature and elements of the offense to which he was pleading guilty, and that he agreed the Factual Resume he was signing was true and would be submitted as

evidence. (CR-ECF No. 22). By signing the Plea Agreement, petitioner acknowledged the maximum penalties the Court could impose, stated that he understood the Court would impose the sentence after consideration of the United States Sentencing Guidelines and also that the guidelines were not binding on the Court. Petitioner also acknowledged that he had reviewed the guidelines with counsel but understood no one could predict with certainty the outcome of the Court's consideration of the guidelines in his case. *Id.* Petitioner acknowledged that he would not be allowed to withdraw his plea if his sentence was higher than expected and also that he fully understood the actual sentence imposed was solely in the discretion of the Court. *Id.* Petitioner averred his guilty plea was not the result of promises apart from those in the Plea Agreement and further that there had been no guarantees or promises from anyone as to what sentence the Court would impose. *Id.* Petitioner further acknowledged the Plea Agreement document was a complete statement of the parties' agreement. *Id.*

On that same date, petitioner signed a Factual Resume and agreed that the following facts were true and formed the basis for his guilty plea:

> On or about April 28, 2015, within the Amarillo Division of the Northern District of Texas, and elsewhere, Jose Luis Velasquez-Huipe (Velasquez-Huipe), defendant, an alien, knowingly entered, attempted to enter, and was found in the United States of America after having been denied admission, excluded, deported, and removed therefrom at and near Laredo, Texas, on or about March 11, 2011, and not having received the express consent of the Attorney General of the United States and the Secretary of Homeland Security to apply for readmission to the United States since the time of his previous denial of admission, exclusion, deportation, and removal therefrom.
>
> On April 28, 2015, Immigration and Customs Enforcement Agents took custody of Velasquez-Huipe from a residence located in Amarillo, Texas. Velasquez-Huipe's fingerprints were entered into the United States immigration database and records checks were conducted. These records checks revealed that Velasquez-Huipe is, and was on April 28, 2015, a citizen and national of Mexico. Velasquez-Huipe had previously been deported and removed from the United States on March 11, 2011, at and near Laredo, Texas. Records checks revealed that the defendant had not received the consent of the Secretary of the Department of Homeland Security or

the Attorney General of the United States to apply for readmission to the United States since the time of that previous deportation.

At the re-arraignment hearing held the same day as the Plea Agreement was filed, petitioner entered a guilty plea to Count 1 of the Indictment. Petitioner confirmed he understood the nature of the charge against him, understood the consequences of his plea, and that the plea was made with his knowledge of any mandatory minimum penalty, as well as knowledge of the maximum penalty that could be imposed as a result of his plea. (CR-ECF No. 39). Petitioner also confirmed the Government had not made any other agreement with him other than what was in the Plea Agreement. *Id.* The Court accepted and entered petitioner's plea and then continued the case for sentencing pending the receipt of the probation officer's Presentence Investigation Report (PSR).

On August 4, 2015, a PSR was prepared. (CR-ECF No. 27). The PSR detailed petitioner's full offense conduct *and* indicated that the petitioner was deported after conviction for a felony crime of violence. *Id.* The PSR attributed a Base Offense Level of 24 for petitioner's charged offense due to the 16-level enhancement for the prior conviction. *Id.* Petition was given a 3-level reduction from his base offense level for his acceptance of responsibility. *Id.* Thus, his Total Offense Level was 21. *Id.* Petitioner's Criminal History Score was assessed at an 8 based on past adult convictions, resulting in a Criminal History Category of IV. *Id.* Based on these calculations, the PSR recommended a guideline imprisonment range of 57 to 71 months. *Id.*

On August 20, 2015, counsel for petitioner filed objections to the PSR. (CR-ECF No. 29). Notably, petitioner did *not* object to the guideline calculations, the criminal history point assessment, or the 16-level enhancement. *Id.* On September 17, 2015, petitioner's counsel filed a Motion for Downward Departure from the guideline range. (CR-ECF No. 32). This motion specifically addressed how the guidelines overstated the seriousness of petitioner's felony conviction that led to multiple criminal history points and the 16-level enhancement, and also

3

argued for a downward departure based on cultural assimilation. *Id*. Petitioner was deported after his conviction for Sexual Assault of a Child. (CR-ECF No. 27). Originally, he was sentenced only to probation for this crime, but his probation was later revoked. *Id*. Petitioner argued in his motion for downward departure not only that he was merely five years older than his underage victim when they began dating, but also that the victim of the sexual assault was already pregnant with another man's baby when they met and began dating. (CR-ECF No. 32). The police were called as a result of a fight between the victim and petitioner, which resulted in two of his past criminal convictions and the crime of violence enhancement. *Id*. Thus, petitioner argued that the 16-level enhancement and the Category IV criminal history seriously overstated his dangerousness to the community and the nature of his past crimes. *Id*. Further, petitioner argued that he had legal status in the United States as a Lawful Permanent Resident before he was ordered removed as a result of these crimes. *Id*. Petitioner's motion asserted he was deserving of a lesser sentence than the bottom end of the guideline range. *Id*.

On September 18, 2015, the Court held petitioner's sentencing hearing. (CR-ECF No. 33). At the hearing, petitioner acknowledged he had read the PSR with the assistance of an interpreter, believed he understood it, and thought everything in the PSR was correct. (CR-ECF No. 40). The Court provided petitioner the opportunity for allocution, and he made a statement to the Court explaining why he returned to the United States. *Id.* Defense counsel again requested the Court depart downward from the guideline range for the reasons set forth in the motion for downward departure. *Id.* The Court then sentenced petitioner to a 65-month term of imprisonment in the United States Bureau of Prisons, a sentence within the recommended guideline range and the prescribed statutory maximum sentence and explained that it set petitioner's penalty at the middle end of the guideline range. *Id.* The sentencing court did not give specific reasons for its failure to

grant the motion for downward departure, but did note that petitioner had continued to disregard the laws of the United States. *Id.* The Court entered Judgment that same date. (CR-ECF No. 34).

Petitioner appealed his conviction and sentence to the United States Court of Appeals for the Fifth Circuit. (CR-ECF No. 36). On September 8, 2015, the appellate court affirmed petitioner's conviction and sentence. (CR-ECF No. 41-42). On appeal, petitioner challenged the imposition of supervised release and the conditions of his supervised release; however, he did not challenge his guideline range or his 16-level enhancement. *Id.* Petitioner filed for a writ with the United States Supreme Court, which was denied on December 12, 2016. (CR-ECF No. 43). Petitioner's conviction became final on that date.

On March 13, 2017, petitioner filed his Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody. (ECF No. 1). On June 26, 2017, the government filed its response in opposition to petitioner's motion pursuant to section 2255. (ECF No. 6). On July 10, 2017, petitioner filed his reply. (ECF No. 7). After the reply was filed, the Court received a typed letter, appearing to be from a Ms. Rhonda Rinehart, the victim of petitioner's sexual assault conviction. (ECF No. 8).

II.
PETITIONER'S ALLEGATIONS

In this motion, petitioner contends he is being held in violation of the Constitution and laws of the United States for the following reasons:

1. Petitioner's trial counsel was ineffective for failing to present the testimony of the victim of the sexual assault conviction that resulted in the 16-level enhancement;

2. Petitioner's trial counsel was ineffective for failing to have a forensic psychiatrist prepare a report indicating that petitioner is not a sex offender;

3. Petitioner's trial counsel was ineffective for failing to present other mitigating testimony to alleviate the 16-level enhancement; and

  4.  The government attorney committed misconduct by failing to inform the sentencing court of the nature and circumstances of his relationship with the victim of his crime.

### III.
### MERITS

Generally, there are four grounds upon which a defendant may move to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255:

(1) the imposition of a sentence in violation of the Constitution or the laws of the United States;

(2) a lack of jurisdiction of the District Court that imposed the sentence;

(3) the imposition of a sentence in excess of the maximum authorized by law; and

(4) the sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255.

*United States v. Placente*, 81 F.3d 555, 558 (5th Cir. 1996). Section 2255 is an extraordinary measure; it cannot be used for errors that are not constitutional or jurisdictional if those errors could have been raised on direct appeal. *United States v. Stumpf*, 900 F.2d 842, 845 (5th Cir. 1990). If the error is not of constitutional or jurisdictional magnitude, the movant must show the error could not have been raised on direct appeal and would, if condoned, "result in a complete miscarriage of justice." *United States v. Smith*, 32 F.3d 194, 196 (5th Cir. 1994). In addition, a defendant who raises a constitutional or jurisdictional issue for the first time on collateral review must show both "cause" for his procedural default and "actual prejudice" resulting from the error. *Placente*, 81 F.3d at 558.

Rule 8 of the Rules Governing Section 2255 Proceedings provides that "[i]f the motion is not dismissed, the judge must review the answer, any transcript and records of prior proceedings, and any materials submitted … to determine whether an evidentiary hearing is warranted." *United States v. Edwards*, 442 F.3d 258, 264 (5th Cir. 2006). Petitioner must present "independent indicia

of the likely merit of [his] allegations." *Id*. at 264. Once such independent evidence is presented, "[a] motion brought under 28 U.S.C. § 2255 can be denied without a hearing only if the motion, files, and records of the case conclusively show that the prisoner is entitled to no relief." *Samaniego*, 532 F. App'x at 535 (citing *United States v. Bartholomew*, 974 F.2d 39, 41 (5th Cir. 1992)). The Court determines that petitioner failed to present independent indicia of the likely merits of his allegations and that the motion, files and records of the case conclusively show that petitioner is entitled to no relief. Thus, no evidentiary hearing was warranted.

### A. Ineffective Assistance of Counsel

A defendant's claim of ineffective assistance of counsel gives rise to a constitutional issue and is cognizable pursuant to § 2255. *United States v. Walker*, 68 F.3d 931, 934 (5th Cir. 1996). The Sixth Amendment to the United States Constitution provides in pertinent part that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to have the Assistance of Counsel for his defense." U.S. Const. art. VI. Under the standard set forth in *Strickland v. Washington*, 466 U.S. 668, 687–88 (1984), to establish that petitioner's counsel rendered ineffective assistance of counsel, petitioner must show that (1) his counsel's performance fell below an objective standard of reasonableness based on the circumstances as they appeared at the time; and (2) petitioner suffered prejudice as a result. *Id.* A failure to establish either prong requires a finding that counsel's performance was constitutionally effective. *See id*. at 696. The Court may address the prongs in any order. *Smith v. Robbins*, 528 U.S. 259, 286 n. 14 (2000).

"Judicial scrutiny of counsel's representation must be highly deferential … [with] every effort made to eliminate the distorting effects of hindsight." *Strickland*, 466 U.S. at 687–89. The Court must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that,

under the circumstances, the challenged action might be considered sound trial strategy." *Id.* at 689. Further, "[t]he reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions." *Id.* at 691.

Petitioner alleges that his attorney provided ineffective assistance of counsel by failing to call witnesses during his sentencing hearing. Because "presentation of testimonial evidence is a matter of trial strategy, and because allegations of what a witness would have testified are largely speculative," complaints of uncalled witnesses are not favored in federal habeas review. *Coble v. Quarterman*, 496 F.3d 430, 436 (5th Cir. 2007) (quoting *Buckelew v. United States*, 575 F.2d 515, 521 (5th Cir. 1978).

To establish prejudice, a movant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694; *see Williams v. Taylor*, 529 U.S. 362, 393 n. 17 (2000) (inquiry focuses on whether counsel's deficient performance rendered the result of the trial unreliable or the proceeding fundamentally unfair). In the sentencing context, the movant must demonstrate that the alleged deficiency of counsel created a reasonable probability that his sentence would have been less harsh. *See Glover v. United States*, 531 U.S. 198, 200 (2001) (holding "that if an increased prison term did flow from an error [of counsel] the petitioner has established Strickland prejudice"). Reviewing courts must consider the totality of the evidence before the finder of fact in assessing whether the result would likely have been different absent the alleged errors of counsel. *Strickland*, 466 U.S. at 695–96. One cannot satisfy the second prong of *Strickland* with mere speculation and conjecture. *Bradford v. Whitley*, 953 F.2d 1008, 1012 (5th Cir. 1992). Conclusory allegations are also insufficient to obtain relief under section 2255. *See Miller v.*

*Johnson*, 200 F.3d 274, 282 (5th Cir. 2000) (holding that "conclusory allegations of ineffective assistance of counsel do not raise a constitutional issue in a federal habeas proceeding").

To succeed on his claim that his attorney failed to call the victim of his sexual assault, Ms. Rhonda Rinehart, whom petitioner alleges would have provided favorable testimony at sentencing, petitioner must show that such witness was available, her testimony would have been favorable, and she would have been willing to testify on his behalf. *See Alexander v. McCotter*, 775 F.2d 595, 602 (5th Cir. 1985). Because these types of claims are disfavored, unless the movant provides the court with affidavits, or similar matter, from the alleged favorable witnesses suggesting what they would have testified to, claims of ineffective assistance of counsel fail for lack of prejudice. *See Sayre v. Anderson*, 238 F.3d 631, 636 (5th Cir. 2001).

On August 1, 2017, the Court received a one-page, typewritten letter signed by a Ms. Rhonda Rinehart. (ECF No. 8). The letter reads as follows:

> I want to start off by saying that because of this situation my 13 yrs old daughter, Sophia, has been raised without knowing who her father is thus far. Something that weighs not only on her but me as well. As it looks, she will never get that chance either. Fair? I don't think so. I would give anything to give her that chance. I know he would have been an amazing father to her.
>
> Now, down to facts, I want to let you know that I was NEVER contacted by a lawyer or anyone to appear, testify, or attend for or against Jose in federal court. When I met him I was already with child, worked, drove, and lived as an adult. I tried attending school but evenually stopped to support my child. All sexual relations between him and I were consentual and open. Then after my 2nd child, Sophia, was born I eagerly looked forward to a long-term relationship with Jose. I loved him very much.
>
> When he first got in trouble, the judge ordered him to take counseling. After a few sessions the counselor told him he was approved to see his daughter but never got that chance. If I could change this whole situation I would, not for him, not for me, but for our daughter. I know that nothing in this letter will change what has happened but hopefully will make it easier for u to decide that fate of this man. I appreciate you taking the time to hear me out.

(ECF No. 8) (errors in original). Petitioner argues that Ms. Rinehart's testimony would have

9

persuaded the sentencing court to impose a lighter sentence and would have negated the 16-level enhancement. First, the Court notes that Ms. Rinehart does not directly indicate that she would have appeared for the sentencing hearing if asked to do so but does indicate she was not contacted to appear. *Id*. As such, the Court will consider that she was available to attend the sentencing hearing.

Insofar as petitioner argues this "mitigating" evidence would have changed his guideline calculations, this is incorrect. Nothing about Ms. Rinehart's testimony challenges the conviction or the resultant 16-level enhancement or criminal history points. Regardless, it is well established that the technical application of the sentencing guidelines is not subject to collateral review in a section 2255 motion. *See United States v. Williamson*, 183 F.3d 458, 462 (5th Cir. 1999). "Section 2255 motions may raise only constitutional errors and other injuries that could not have been raised on direct appeal that will result in a miscarriage of justice if left unaddressed. Misapplications of the Sentencing Guidelines fall into neither category and hence are not cognizable in § 2255 motions." *Id*. However, as petitioner's motion can also be read to argue he would have received a downward variance or lesser sentence as a result of this testimony, the Court finds petitioner has failed to meet his burden under *Strickland* to show he was prejudiced by the failure to call this witness at sentencing. *See United States v. Grammas*, 376 F.3d 433, 438 (5th Cir. 2004) (in the context of deficient conduct at sentencing, prejudice occurs when the attorney's failure results in any amount of additional prison time.). Here, petitioner has not established that this testimony would have resulted in a lesser sentence.

Specifically, this is because the sentencing court was already presented with the information contained in Ms. Rinehart's letter through the presentation of petitioner's counsel in the motion for downward departure filed prior to sentencing and by the counsel's arguments

10

presented at sentencing. (CR-ECF Nos. 32 and 40). The motion for downward departure contained the following information:

> …Look at the nature and circumstances of his Sexual Assault of a Minor charge. Jose Luis was twenty-one and the young woman was sixteen. Jose met her when she was pregnant with another man's child. At first they were friends and then became closer after she had the baby. Jose Luis took care of her and the other man's child as they began to date. About a year later, Jose Luis and Rhonda get in [a] fight. Jose Luis calls the police after it happens, setting off a whole chain of unfortunate events that greatly impact his sentence here today. First, he is charged with assault and serves a short time. After, the Police discover that Rhonda and Jose Luis were having sexual relations and he was charged with Sexual Assault of a Minor. Jose Luis pled guilty and received 5 years of probation. Although he knew he was not supposed to be around Rhonda during his probation, she continually sought him for support and help with their baby, Sophia. Jose Luis could not resist spending time with his sweet child. During this time, Jose Luis attended counseling and with two years of probation complete, his Probation Officer gave him permission to see the child. When discussing this with Rhonda's father, who knew that Jose Luis and Rhonda's relationship continued this and he saw and supported them, disclosed to the Probation Officer that Jose Luis had already been seeing the baby. Jose Luis' probation was then revoked and he was charged with failing to register as a sex offender. Before all of this occurred, Jose Luis' citizenship application was pending with United States Citizenship and Immigration Services. When talking about this case, he expressed "I didn't know I was going to get into all this over a girl." This conviction has now come back to haunt him in the application of the 16-level enhancement.

*Id.* Petitioner's counsel presented the same information contained in Ms. Rinehart's letter to the sentencing court concerning the nature of the underlying criminal charge. Counsel's performance cannot be deemed ineffective if the challenged evidence was duplicative of evidence that was already received. *See Lavernia v. Lynaugh*, 845 F.2d 493, 498 (5th Cir. 1988) (failure to call witnesses whose testimony would have been cumulative on issue of whether defendant spoke English did not prejudice defendant). The underlying facts concerning petitioner's criminal conviction were known to the sentencing judge and were not challenged by other evidence. Thus, petitioner's argument that the consensual nature of his relationship would have resulted in a lesser sentence is not valid. Further, several reasons for not presenting the testimony of a victim of a

crime, including controlling specifically what beneficial information the sentencing court should hear, exist.

Petitioner also claims counsel was ineffective for the failure to present the report of a forensic psychiatrist to establish that petitioner "is not a sex offender." However, petitioner has failed to present any evidence that a forensic psychiatrist, when presented with these circumstances, would testify that petitioner is "not a sex offender." Further, he has not submitted the affidavit of any psychiatrist for the Court to determine how any proposed testimony might have affected the outcome of sentencing. Thus, petitioner has wholly failed to establish prejudice for the failure to call such a witness.

To the extent that petitioner also argues that his trial counsel should have presented "other mitigating evidence" to establish petitioner should have received a lighter sentenced based on the nature of his past crimes, petitioner has once again failed to meet his prejudice burden. Petitioner fails to identify additional mitigating evidence, its availability at the time of his sentencing hearing, and how it would have affected the outcome of his case.

Thus, the Court finds that the motion, files, and records of the case "conclusively show that the prisoner is entitled to no relief," and no evidentiary hearing is necessary. *Samaniego*, 532 F. App'x at 535.

Petitioner's grounds (1-3) concerning ineffective assistance of trial counsel at his sentencing hearing should be denied.

B.   Government Misconduct

Petitioner next argues the government acted with impropriety in failing to bring to the attention of the sentencing court information concerning the nature of petitioner's past crime. Relief requested under section 2255, "is reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised on direct appeal and, would,

12

if condoned, result in a complete miscarriage of justice." *United States v. Capua*, 656 F.2d 1033, 1037 (5th Cir. 1981). Petitioner did not raise this issue on appeal. Further, it is clear from the filing of the motion for downward departure that the government did not attempt to conceal evidence from the sentencing court regarding any mitigating circumstances of petitioner's past crimes. Rather, the government was entitled to remind the sentencing court that regardless of the circumstances of the crime, petitioner was convicted of it and had the opportunity to fight his criminal case. By law, petitioner was guilty of the crime charged regardless of the consensual nature of the sexual relationship, based on the victim's age at the time of the encounter. The government had no affirmative duty to present evidence to the sentencing court, and petitioner has failed to articulate any evidence that was concealed from petitioner or his counsel during discovery. This is especially true as this evidence *was* all presented to the sentencing court. It is clear from the record that the sentencing court simply did not believe this evidence warranted a reduced sentence.

Petitioner's final ground should be denied.

## IV.
## RECOMMENDATION

For the reasons set forth above, it is the RECOMMENDATION of the United States Magistrate Judge to the United States District Judge that the Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody filed by petitioner JOSE LUIS VELASQUEZ-HUIPE be DENIED.

## V.
## CERTIFICATE OF APPEALABILITY

An appeal may not be taken to the court of appeals from a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability" ("COA"). 28 U.S.C. § 2253(c)(1)(A). Although petitioner has not yet filed an appeal, the Court nonetheless

13

addresses whether he would be entitled to a COA. *See Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000). A COA may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

The Court concludes that reasonable jurists could not debate the denial of petitioner's section 2255 motion on substantive grounds nor find that the issues presented are adequate to deserve encouragement to proceed further. *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). Thus, the undersigned further recommends that a COA be denied.

## VI.
## INSTRUCTIONS FOR SERVICE

The United States District Clerk is directed to send a file marked copy of the Findings, Conclusions and Recommendation to petitioner and to each attorney of record by the most efficient means available. IT IS SO RECOMMENDED.

ENTERED January 8, 2020.

*(signature)*
LEE ANN RENO
UNITED STATES MAGISTRATE JUDGE

### * NOTICE OF RIGHT TO OBJECT *

Any party may object to these proposed findings, conclusions and recommendation. In the event parties wish to object, they are hereby NOTIFIED that the deadline for filing objections is fourteen (14) days from the date of filing as indicated by the "entered" date directly above the signature line. Service is complete upon mailing, Fed. R. Civ. P. 5(b)(2)(C), or transmission by electronic means, Fed. R. Civ. P. 5(b)(2)(E). **Any objections must be filed on or before the fourteenth (14th) day after this recommendation is filed** as indicated by the "entered" date. *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(2); *see also* Fed. R. Civ. P. 6(d).

Any such objections shall be made in a written pleading entitled "Objections to the Findings, Conclusions and Recommendation." Objecting parties shall file the written objections with the United States District Clerk and serve a copy of such objections on all other parties. A party's failure to timely file written objections to the proposed findings, conclusions, and recommendation contained in this report shall bar an aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings, legal conclusions, and recommendation set forth by the Magistrate Judge in this report and accepted by the district court. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1), *as recognized in ACS Recovery Servs., Inc. v. Griffin*, 676 F.3d 512, 521 n.5 (5th Cir. 2012); *Rodriguez v. Bowen,* 857 F.2d 275, 276-77 (5th Cir. 1988).